IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      Criminal Action No. 5:11-cr-41

MARCUS LAVERN BROOKS,

    Defendant.

## **REPORT AND RECOMMENDATION DEFENDANT'S MOTION TO SUPPRESS BE DENIED**

This matter comes before the Court on Defendant's Motion to Suppress filed on November 23, 2011.[1] On December 2, 2011, this Court was scheduled to hold an evidentiary hearing and argument on Defendant's Motion to Suppress. However, at the start of the hearing, Defendant's counsel advised the Court that Defendant was considering whether to ask the Court for new counsel. The undersigned advised Defendant that if he did in fact want a new attorney, he was to write a letter to the Court asking for new counsel by December 9, 2011. Accordingly, the evidentiary hearing and argument on Defendant's Motion to Suppress was continued to December 15, 2011. The Court did not receive such a letter from Defendant, but when he appeared at the rescheduled hearing, he advised the Court that he had his Motion for Appointment of New Counsel in hand. The evidentiary hearing and argument was again rescheduled after Defendant received new counsel. The Court held the evidentiary hearing and argument on Defendant's Motion to Suppress on January 23, 2012. Defendant appeared in

---

[1]Dkt. No. 22.

person and by his counsel Franklin W. Lash, Esq., in person. The United States of America (hereinafter "the Government") appeared by Randolph J. Bernard, in person. The Government tendered the testimony of Officer Eric Popish and Sargent August Robert Alexander, III. Defendant tendered the testimony of Shariah Brandon. No other testimony was taken nor was any other evidence adduced.

## I. Introduction

A.   Background

On October 4, 2011, Defendant was named in a one count indictment that charged him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant now moves this Court to suppress evidence obtained in violation of the Fourth Amendment on the day of his arrest.

B.   The Motion

   1.   Motion to Suppress

C.   Recommendation

I recommend Defendant's Motion to Suppress be **DENIED** because the officers' warrantless entry into the hotel room was based on exigent circumstances, because Defendant's arrest was based on probable cause, and because the officers were directed by Defendant to retrieve his firearm, wallet and identification card.

## II. Facts

On June 12, 2011, the Weirton police received a phone call indicating that Marcus Brooks and Shariah Brandon, a juvenile who had been away from her parents' home for several days, were in a room at the Townhouse Motel, and that drug activity was likely going on in the

room. Police officers met with the hotel clerk at the Townhouse Motel who confirmed that Marcus Brooks was staying in room seventeen and that there was a young, black female with him, and that he also believed drug activity was going on in the room. Weirton police officers then met to discuss the best way to handle the situation. Because they were concerned about the juvenile and needed to check quickly on her safety, and because they were concerned they did not have probable cause to obtain a search warrant, officers decided to go to the Townhouse Motel to do a "knock and talk."

After arriving at the motel, Officer Eric Popish and Sargent Robert Alexander walked to the door of room number seventeen, announced they were the police, and knocked on the door. After a few moments, Marcus Brooks answered the door and stood in the doorway with his left hand behind his back. He asked the officers what they were doing and why they were there while slowing backing up into the room, still with his left hand behind his back. The officers repeatedly asked to see his hands, but Defendant did not take his hand out from behind his back. Even after the officers drew their weapons,[2] Defendant still refused to show his hands. Finally, after having requested Defendant to see his hands five or six times, Sargent Alexander stated to Officer Popish that if Defendant did not show his hand, he should taser him. Then Defendant removed his hand from behind his back and the officers stepped into the room to handcuff him.

In plain view on the table next to the door was something white tied in a plastic baggie, later identified as oxycodone tablets. The Defendant was subsequently placed under arrest for possession of a controlled substance and contributing to the delinquency of a minor, was told the substance of his Miranda rights, and was placed in a squad car to be taken the Weirton Police

---

[2] Shariah Brandon testified the officers' weapons were drawn when the door was opened.

Department for processing.

While en route to the Weirton Police Department, Officer Popish asked Defendant if there was anything in the room the officers need to be cautioned about, and Defendant stated that there was a .25 caliber firearm in a backpack in the room that he wanted. He also stated he wanted his ID card from his wallet in the dresser drawer in the motel room. Officer Popish then called Sargent Alexander and told him where he could find the gun and the ID card. Sargent Alexander found the gun inside the backpack, and when he opened the dresser drawer to retrieve Defendant's identification card, he also saw a digital scale, which he seized as evidence.

### III. Motion to Suppress Evidence

A.  Contentions of the Parties

Defendant contends that neither probable cause nor exigent circumstances existed for the officers to make an entry into Defendant's hotel room. Defendant contends that the Government's argument that Defendant did not show his hands and was backing into the motel room are only post hoc attempts by law enforcement to justify violations of Defendant's Fourth Amendment rights. Defendant further contends his arrest and the seizure of evidence were invalid.

The Government contends that exigent circumstances justified the officers' warrantless entry into Defendant's hotel room. The Government contends that exigent circumstances arose during the valid "knock and talk" when Defendant repeatedly refused to show his hands and when he started backing away into the motel room. The Government further contends the Defendant was properly arrested and that the evidence taken was validly seized.

B. Discussion

    i. Warrantless Entry

The issue before this Court is whether exigent circumstances existed when the officers entered Defendant's hotel room such that the warrantless entry did not violate his Fourth Amendment rights. As a general rule, "[w]hile a warrant is generally required to conduct a search of a person's home, a warrantless search may be conducted when the 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment," Mincey v. Arizona, 437 U.S. 385 (1978)(quoting McDonald v. United States, 335 U.S. 451, 456 (1948)). Although the instant case involves a hotel room rather than a home, the protection accorded to one's home has been extended to one's hotel room. Hoffa v. United States, 385 U.S. 293, 301 ("[a] hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office"). Furthermore, the Fourth Circuit has recognized that exigent circumstances may arise when officers reasonably believe that evidence may be destroyed or removed before they can obtain a search warrant, United States v. Turner, 650 F.2d 526, 528 (4th Cir. 1981), and that exigent circumstances may arise when officers cannot timely do seek out a search warrant without creating a threat to officer safety or to the general public. United States v. Reed, 935 F.2d 641, 643 (4th Cir. 1991)(explaining that the presence of a fun in the house justified a search and seizure on the basis of exigent circumstances).

In this case, Officer Popish and Sargent Alexander knocked on Defendant's door to conduct a "knock and talk" and identified themselves as police officers. Defendant answered the door with him left hand behind his back so that the officers could not see if he was concealing a weapon in his hand. Officer Popish testified that he asked Defendant five or six times to show his hands, but that

Defendant would not take his left hand out from behind his back. Hr'g Tr. ___. Further, he testified that he raised his weapon when Defendant would not show his hands, and even with his weapon drawn, Defendant still refused to comply. Hr'g Tr. ___. Sargent Alexander's testimony corroborates Officer Popish's version of events and Shariah Brandon also confirmed the officers' version of events except she claimed the weapons were drawn when Defendant opened the door. Sargent Alexander testified that Officer Popish asked Defendant "a half dozen times" to show his hands, but that he continuously refused. Hr'g Tr. ___. Then, Officer Popish testified that Sargent Alexander told him to use a taser on Defendant if he would not comply by showing his hands. Hr'g Tr. ___. This is also corroborated by Sargent Alexander's testimony, during which he also indicated he had instructed Officer Popish to use his taser if he did not show his hands. Hr'g Tr. ___. Both Officer Popish and Sargent Alexander also testified that Defendant was backing up into the hotel room, closer to the bathroom, while the exchange was taking place. Hr'g Tr. ___.

Shariah Brandon, the juvenile who was with Defendant in the hotel room that day, also gave testimony that aligned, at places, with the testimony of Officer Popish and Sargent Alexander. She testified that the officers told them to put their hands up. Hr'g Tr. ___. She also testified that Defendant started backing away from the officers after having opened the door. Hr'g Tr. ___. To the extent that her testimony differed from the testimony of Officers Popish and Alexander, this Court must make a credibility determination. The Court notes that she testified she was in a romantic relationship with Defendant and that he is the father of her child, indicating that her testimony may not be entirely true. Hr'g Tr. ___. The Court also notes that she testified she does not want Defendant to be prosecuted and that she is distrustful of the prosecution because she feels that they are putting pressure on her to say that the gun found in the room was his. Hr'g Tr. ___. Given these

6

facts, the Court finds that Shariah Brandon's testimony is not entirely credible.

In such a context and given the facts as stated above, this Court believes an objectively reasonable officer would likely have been concerned for his safety. Defendant's continued refusal to show his hands created a potential threat to the safety of the offices involved because they were not able to discern whether he was holding a weapon in that hand. Exigent circumstances thus existed and the officers were justified in entering Defendant's hotel room without a warrant. This was not a scenario where the officers planned in advance to make a warrantless entry of Defendant's hotel room; rather, the need to enter arose while they were conducting a valid "knock and talk" and it was not feasible for them, at the time Defendant had his hand behind his back, to send an officer to get a warrant and return with it. Accordingly, the officers' warrantless entry was proper.

  ii.  Subsequent Arrest and Seizure of Evidence

The next question posed to this Court is whether the Defendant's arrest and the seizure of the firearm and scale were lawful. In determining whether probable cause existed to arrest Defendant, this Court notes that "probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully reduced to a set neat set of legal rules. Illinois v. Gates, 462 U.S. 213, 232 (1983). Although the concept eludes a precise definition, it has been said that "[p]robable cause exists when known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that an offense has been or is being committed." United States v. Davis, 458 F.2d 819, 821 (D.C. Cir. 1972). In this case, once officers were inside the room, as Officer Popish testified, they noticed that there were around 15 plastic baggies on the table and that one of them contained something white inside. Hr'g Tr. ___. By experience the officers knew drugs were distributed in tied-off sandwich bags. These were in plain

view upon entry. This evidence is coupled with the fact that the officers had received a call from Shariah Brandon's mother indicating drug activity was going on in the hotel room, and had confirmed this information with the hotel clerk who also suspected that drug activity was going on in the room. Hr'g Tr. ___. The officers also had certain expertise and experience they drew upon, having already executed several search warrants at this motel before and participated in raids there. Hr'g Tr. ___. See also United States v. Ortiz, 422 U.S. 891, 897 (1975)("officers are entitled to draw reasonable inferences from these facts in light of their knowledge of the area and their prior experience"); United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975)("the officer is entitled to assess the facts in light of his experience"). The totality of the circumstances thus indicates that a reasonably prudent officer had cause to believe a crime had been committed and thus Defendant's arrest was proper.

Next, Defendant contends the seizure of the scale and the seizure of the firearm were invalid. While a person's home, or hotel room in this case, may not be subjected to a warrantless search merely because he happens to be arrested there, Chimel v. California, 395 U.S. 752 (1969), a search may be conducted without a warrant when valid consent to search is given. Consent may be given "even if the person giving consent does not recite the talismanic phrase: 'You have my permission to search.'" United States v. Buettner-Janusch, 646 F.2d 759, 764 (2d Cir. 1981)(internal citation omitted). Consent can be given by actual consent, established either through direct or circumstantial evidence of consent, or it can be implied based on the conduct of the person in question immediately preceding the time of the search. See United States v. Hylton, 349 F.3d 781 (4th Cir. 2003)(finding "implied consent" to police entry to retrieve gun after woman called police and told them her boyfriend had a gun inside); Brown v. State, 856 S.W.2d 177 (Tex.Crim.App. 1993)(calling police

8

to murder scene implies consent to search premises to investigate the offense). In the instant case, the only searches conducted were conducted at Defendant's request. While Defendant was in the back of the squad car, he stated to Officer Popish that there was a .25 caliber firearm in a backpack in the room, and that he knew they were going to find it anyway. Hr'g Tr. ___. In response to Defendant's statements about the firearm, Officer Popish called Sargent Alexander and he was able to locate the backpack and the firearm inside. Although Defendant never expressly stated that he was giving consent to search the backpack, by admitting to officers it was there and that they would find it anyway, he impliedly gave his consent for the officers to search for and retrieve it. Similarly, while Defendant was in the back of the squad car with Officer Popish, he stated that he would like his ID and asked if an officer could retrieve it for him from the dresser drawer inside the motel room. Hr'g Tr. ___. Sargent Alexander opened the dresser drawer to get Defendant's ID, and open opening the drawer, in plain view, he saw a digital scale. Because Defendant consented to this search, and because the scale was in plain view upon opening the drawer, this evidence was also legally seized.

## IV. Recommendation

I recommend Defendant's Motion to Suppress Evidence be **DENIED** because exigent circumstances justified the officers' warrantless entry into the hotel room, because Defendant's arrest was based on probable cause, and because the seizures were made at Defendant's request.

Any party who appears *pro se* and any counsel of record, as applicable, may, on or before **February 8, 2012**, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to

9

appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: January 25, 2012

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE