IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Criminal Action No. 5:11CR41
                                                    (STAMP)

MARCUS L. BROOKS

    Defendant.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORTS AND
RECOMMENDATIONS OF MAGISTRATE JUDGE**

I. Procedural History

The defendant was indicted on October 4, 2011 in a one-count indictment which charges him with one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment also contains a forfeiture allegation seeking forfeiture of a .25 caliber Beretta semi-automatic handgun, model 950 BS, serial number DAA038860. The defendant was then arraigned by United States Magistrate Judge James E. Seibert on October 18, 2011. On November 23, 2011, the defendant filed the instant motion to suppress all evidence obtained on the day of the defendant's arrest, June 12, 2011, as obtained in violation of the defendant's constitutional rights. The United States filed a response in opposition to this motion, arguing that the defendant's constitutional rights were not violated on the day of his arrest, and that all of the evidence was obtained appropriately and should not be suppressed.

Magistrate Judge Seibert held a suppression hearing on the defendant's motion, during which he heard testimony from two of the law enforcement officers who participated in the defendant's arrest on June 12, 2011, and from Shariah Brandon, the female minor witness who had been present with the defendant at the time of the arrest. Following this hearing, the magistrate judge issued a report and recommendation recommending that this Court deny the defendant's motion to suppress in its entirety. The defendant filed timely objections to the report and recommendation[1] and the United States responded to these objections.

This Court now affirms and adopts the report and recommendation issued by the magistrate judge and denies the defendant's motion to suppress.

---

[1]The defendant also filed an addendum to his objections, which also requests that the defendant be added as co-counsel. Insofar as this addendum can be construed as a motion to add the defendant as co-counsel in this case, such motion is denied. This Court has instructed this defendant multiple times that, although he has a Sixth Amendment right to be represented by an attorney, he has no right to act as co-counsel. United States v. Tarantino, 846 F.2d 1384, 1420 (D.C. Cir. 1988), cert. denied, 488 U.S. 867 (1988). Whether to allow a defendant to assume some of his lawyer's functions, that is, to engage in "hybrid representation" is within the sound discretion of the judge. United States v. LaChance, 817 F.2d 1491 (11th Cir. 1987), cert. denied, 484 U.S. 928 (1987). Hybrid representation should be permitted only where a defendant has made a showing of some special reason for the defendant to act as co-counsel. United States v. West, 877 F.2d 281 (4th Cir. 1989), cert. denied, 493 U.S. 959 (1989). The defendant here has made no showing of a special need act as co-counsel in this matter.

## II. Facts

The Weirton, West Virginia Police Department received a phone call on June 12, 2011 that Shariah Brandon, a seventeen year-old juvenile, had been absent from her parents' home for several days and that she was suspected to be engaged in drug activity with the defendant at the Townhouse Motel in Weirton. Officer Eric Popish and Sergeant A. Robert Alexander, both of the Weirton Police Department, met with the front desk clerk of the Townhouse Motel to inquire into the legitimacy of the phone call regarding Ms. Brandon. The clerk confirmed that the defendant and a young, black female were staying in a room and that the clerk also believed that the two were engaged in drug activity. The officers testified that, because they felt that they needed to confirm Ms. Brandon's safety and because they did not believe that they had probable cause to obtain a warrant, they decided to simply go to the room to perform a "knock and talk." Multiple other officers who were nearby due to a water crisis in the city that day, accompanied Officer Popish and Sergeant Alexander to the knock and talk.

Upon arrival at the room in which the defendant was staying, Officer Popish and Sergeant Alexander knocked on the door and announced that they were police officers. The officers testified that at least Officer Popish was dressed in uniform. The defendant answered the door and asked the officers why they were there. As an exchanged occurred between the officers and the defendant, the

defendant slowly backed up into the room and was situated in such a way that his left hand was not visible to the officers. The officers repeatedly asked the defendant to show his left hand, and at some point during the incident, drew their weapons. After demanding that the defendant show both of his hands allegedly five or six times, Sergeant Alexander instructed Officer Popish or any of the accompanying officers to taser the defendant if he did not show his hands.

Officer Popish testified that, during the exchange with the defendant upon stepping into the room, in his view of Ms. Brandon, he noticed bags of something white, later determined to be oxycodone tablets, sitting on a table. The defendant was placed under arrest for possession of a controlled substance and contributing to the delinquency of a minor. He was given his <u>Miranda</u> rights and taken outside of the motel room.

Officer Popish testified that, when the defendant was placed in his squad car and was being driven back to the Weirton Police Department, the officer inquired as to whether there was anything present in the room of which the officers should be aware. The defendant allegedly responded that there was a gun in a backpack in the room that the police would find anyway, and that he needed his wallet out of the night stand next to the bed. According to Officer Popish's testimony, he then called Sergeant Alexander and told him where the gun and wallet could be found. Sergeant

4

Alexander then found the gun in the backpack and seized it and an electronic scale which was found in the night stand with the defendant's wallet.

## III. Applicable Law

Under the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B), a magistrate judge may be designated by a district court to consider motions to suppress evidence as unconstitutionally obtained. After the magistrate judge has considered such a motion, he must submit '"proposed findings of fact and recommendations for the disposition.'" Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Parties are entitled to file written objections to the findings and recommendations of the magistrate judge, and if a party chooses to object within the fourteen day period allotted by the Act, the district court shall make a de novo review of the findings and recommendations objected to. Id. and 28 U.S.C. § 636(b)(1)(C). Any findings to which no party objects are upheld by the district court unless "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(C).

Here, the defendant filed objections to both of the magistrate judge's report and recommendations and all findings challenged by these objections will be reviewed de novo. However, all findings in the reports that are not addressed by the defendant's objections will be reviewed under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A).

IV. Discussion

A. Knock and Talk

The defendant argues that the "knock and talk" conducted without a warrant at his hotel room, which led to his arrest and the seizure of evidence was improper because the officers admit that they did not have probable cause to obtain a warrant. Although not the defendant's home, case law interpreting the Fourth Amendment has conclusively held that a person has a reasonable expectation of privacy, and is thus entitled to Fourth Amendment protection, in a hotel room in which he is staying. Hoffa v. United States, 385 U.S. 293, 301. Therefore, a warrant would be required to allow law enforcement to enter and conduct a search of this defendant's motel room at the Townhouse Motel.

However, in the United States Court of Appeals for the Fourth Circuit, a "knock and talk," wherein law enforcement officers approach the entrance of a person's home, or in this case, hotel room, in order to ask questions of those inside, is not a situation which requires a warrant or probable cause to be valid. See United States v. Taylor, 90 F.3d 903, 909 (4th Cir. 1996) (finding that approaching the front door of the defendant's home and knocking was permissible as the defendant's "front entrance was as open to the law enforcement officers as to any delivery person, guest, or other member of the public"). In Davis v. United States, 327 F.2d 301 (9th Cir. 1964), an opinion cited with approval by the Fourth

Circuit in Taylor, the Ninth Circuit held that when police officers have reasonable suspicion which would make it reasonable for them to desire to question a person regarding their suspicions, no "right of privacy" is invaded by officers or anyone else walking up to that person's front door and knocking "with the honest intent of asking questions of the occupant thereof." Id. at 303.

The facts at hand support the magistrate judge's conclusion that this was a valid "knock and talk," and this Court so finds in accordance with the magistrate judge. Officer Popish and Sergeant Alexander had received a phone call from Ms. Brandon's mother informing them that a minor was in Mr. Brooks' room and that drug activity was suspected. Further, the front desk clerk of the Townhouse Motel confirmed Ms. Brandon's mother's statements, and also informed the officers of his shared suspicion of drug activity. Therefore, the officers had reasonable suspicion that justified their desire to question Mr. Brooks and to check into Ms. Brandon's welfare.

The testimony of the officers indicates that this intent alone brought them to knock on the hotel room door, and Magistrate Judge Seibert found this testimony credible. Further, while Ms. Brandon's testimony indicates that the officers may have drawn their weapons at the outset of the encounter, testimony which may, if believed, lend itself to a determination that the officers did not intend to simply talk with the defendant, the testimony of the

officers themselves denies that weapons were drawn at the outset. As previously stated, Magistrate Judge Seibert found the testimony of the officers to be credible, while he made a reasoned credibility determination that Ms. Brandon was less-than-credible as a result of her romantic relationship with the defendant and the fact that the defendant is the father of her child, as well as her clear and admitted disdain for the officers involved and the prosecution, who she feels are pressuring her to testify against the defendant.

The magistrate judge heard live testimony on this matter, and is the only one who can bear on demeanor and all other visual aspects of credibility. Because of this, he is in the best position to judge whether testimony is to be believed, and great deference must be given to his well reasoned determination. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Thus, this Court defers to the Magistrate Judge Seibert's determinations in this regard and finds that the statements of Shariah Brandon are not entirely credible. Accordingly, this Court affirms the decision of the magistrate judge that the "knock and talk" conducted by the officers on the hotel room in which the defendant was staying was appropriate.

B. Warrantless Entry

As stated above, a person's hotel room is entitled to Fourth Amendment protection, so a warrant would generally be required to

allow law enforcement to enter and conduct a search of this defendant's room at the Townhouse Motel.  However, the United States contends that exigent circumstances existed surrounding the entry of Officer Popish and Sergeant Alexander into the defendant's room on June 12, 2011, thus creating an exception to the warrant requirement.  See Mincey v. Arizona, 437 U.S. 385 (1978).  The Fourth Circuit has held that exigent circumstances may arise as an exception to the warrant requirement when "an officer could reasonably believe" that the urgency of "the possibility of danger to police guarding the site" is such that it is unreasonable to require the officers to take the time to obtain a warrant.  United States v. Reed, 935 F.2d 641, 642-43 (4th Cir. 1991).  Further, while guidelines have been delineated, the discussion of Fourth Amendment protections is not one of rigid requirements and checklists.  The key to Fourth Amendment protections against unreasonable searches and seizures, as well as the key to a determination regarding the existence of exigent circumstances, is reasonableness based upon the situation at hand.  See Kentucky v. King, 131 S. Ct. 1849, 1856 (2011).

In the situation presently before this Court regarding Officer Popish and Sergeant Alexander's entrance into Mr. Brooks' hotel room, this Court agrees with the magistrate judge that exigent circumstances existed, thus a warrant was not required.  As the magistrate judge pointed out, the officers identified themselves as

police officers when they knocked on the door,[2] and at least Officer Popish was dressed in uniform, thus removing any doubt of whether Mr. Brooks was aware that they were law enforcement officers. Further, while there is disagreement regarding when the officers drew their weapons, it is undisputed that the defendant and Ms. Brandon were asked to raise their hands, at some point the officers' weapons were drawn, and that the defendant began to back into the room toward the restroom when he opened the door. Further, both officers testified that the defendant did not raise his left hand when prompted, but rather kept it out of their view until threatened with a taser. It seems clear to this Court that, under these circumstances, it is reasonable for the officers to fear that the immediate safety of all people involved was at risk. The officers had reason to believe that drug activity was occurring in the room, and this coupled with the behavior of the defendant in refusing to show his left hand, gave rise to a reasonable belief that he could be hiding a weapon or attempting to move toward a weapon as he backed into the room toward the restroom.

The testimony of Shariah Brandon differed at points from the testimony of the officers in that she testified that the officers did not demand that the defendant show his hands multiple times,

---

[2]There does not seem to be any disagreement as to this fact, as Shariah Brandon confirmed that the officers identified themselves before the defendant even opened the door. (Hr'g Tr. *67-68.)

that the officers entered the room immediately after Mr. Brooks opened it, that the defendant did not have his left hand behind his back when he opened the door, and that no threat to taser Mr. Brooks was ever made. However, as stated above, this Court defers to the magistrate judge's determination that Ms. Brandon's testimony was not entirely credible. Further, she also testified in line with the officers at times, admitting that they asked both she and Mr. Brooks to raise their hands, and that Mr. Brooks began backing into the room when he opened the door, thus bolstering the officer's testimony in those regards.

This Court concludes that the officers reasonably believed that their safety and the safety of others at the scene may have been in immediate danger, thus creating exigent circumstances and abrogating the requirement that a warrant be obtained before the officers could enter the hotel room. Accordingly, the officers' warrantless entry was proper.

C.  Arrest and Seizure of Evidence

In order to validly execute an arrest, probable cause to believe that the defendant is committing or has just committed an arrest-worthy offense is necessary. In order to determine whether probably cause existed to make an arrest, the Court must decide whether "known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that an offense has been

11

or is being committed." United States v. Davis, 458 F.2d 819, 821 (D.C. Cir. 1972).

The defendant argues that probable cause did not exist to arrest him because once the officers entered, it was clear that there was nothing in his left hand, and his backing into the room did not create probable cause to arrest him. However, as the Magistrate Judge notes, "probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). It is true that the officers may not have had probable cause to arrest the defendant before they entered the room or even based upon his actions which caused them to enter the room, but once the officers were validly in the room as a result of the exigent circumstances created by the defendant's actions upon answering the door, they were able to see, in plain view on the table, fifteen tied-off baggies with a white substance inside. See Texas v. Brown, 460 U.S. 730 (1986) (in-depth explanation of the plain-view doctrine).

This Court agrees with Magistrate Judge Seibert that the officers' observation of these baggies created probable cause to arrest the defendant. The officers' experience told them that the substance in the bags was likely drugs, and that drugs were often distributed in tied-off baggies like the ones on the table. Further, they had been informed by multiple parties that drug

activity was suspected in the room. Probable cause does not require that the officers be completely certain that the substance in the bags was drugs, only that their understanding of the situation made it reasonable for them to believe that it was. The totality of the situation in the room created this reasonable belief. Thus, the defendant's arrest was proper.

Finally, the defendant argues that the warrantless search which led to the seizure of the gun and the electronic scale violated his Fourth Amendment rights. However, one specific exception that makes a warrantless search "reasonable" under the Fourth Amendment is valid consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). For consent to be valid, it is not necessary for a defendant to utter any "magic phrase" or key word, only that his actual consent be communicated either through direct or circumstantial evidence, or implied by the person's conduct. See United States v. Hylton, 349 F.3d 781 (4th Cir. 2003).

Here, as the magistrate judge concluded, the defendant gave valid consent to search for the gun and for Sergeant Alexander to open the night stand, which placed the scale in plain view. Officer Popish testified that the defendant was given his Miranda warnings after he was arrested, and that he did not ask for an attorney or indicate his unwillingness to speak with police at that time. (Hr'g Tr. *15-16.) This testimony has not been contested by the defendant. Once in the police car, when asked if anything was

in the room of which the officers should be aware, the defendant told Officer Popish that he had a gun, and told him where it was. Further, he asked that his wallet be retrieved in the night stand. While these statements do not expressly grant consent to search, they clearly indicate that the defendant allowed the officers to search for the specific items mentioned in the specific places where the defendant said that they were located. These are the only items and locations searched, and the scale was in plain view once Sergeant Alexander validly entered the night stand to retrieve the defendant's wallet. Thus, this evidence was properly seized through valid consent.

## V. Conclusion

For the reasons stated above, after <u>de novo</u> review, this Court hereby AFFIRMS and ADOPTS in its entirety the magistrate judge's report and recommendation. Accordingly, the defendant's motion to suppress is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the defendant and to counsel of record herein.

DATED: February 23, 2012

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE