# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MARCUS L. BROOKS,**

    **Petitioner-Defendant,**

**v.**                                                     **Civil Action No. 5:14-cv-31**
                                                       **Criminal Action No. 5:11-cr-41**
                                                       **(Judge Stamp)**

**UNITED STATES OF AMERICA,**

    **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION/OPINION

## I. INTRODUCTION

On March 5, 2014, Marcus L. Brooks ("Petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil Action No. 5:14-cv-31, Docket No. 1; Criminal Action No. 5:11-cr-41, Docket No. 133.) On March 6, 2014, the Clerk of Court mailed Petitioner a Notice of Deficient Pleading, which informed him that he had twenty-one (21) days to correct his Motion by filing it on the correct form as per Local Rule of Prisoner Litigation Procedure 3.4. (Docket No. 136.)[1] Petitioner filed his correct form ("Court-Approved Motion") on March 14, 2014 (Docket No. 137), along with a motion for leave to file excess pages (Docket No. 138). The undersigned granted Petitioner's motion on April 29, 2014. (Docket No. 140.) That same day, the undersigned entered an Order directing the Government to respond to Petitioner's motion. (Docket No. 141.) Petitioner filed a supplement to his motion on May 2, 2014. (Docket No. 142.) On May 27, 2014, the Government filed its response. (Docket No. 144.) Petitioner did not file a reply.

---

[1] From this point, all docket numbers refer to entries in Criminal Action No. 5:11-cr-31.

The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss Petitioner's motion.

## II.   FACTS

### A.   *Conviction and Sentence*

On October 4, 2011, a Grand Jury sitting in the Northern District of West Virginia returned an Indictment against Petitioner, charging him with one count of being a prohibited person in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On October 12, 2011, Brendan S. Leary, Assistant Federal Public Defender, was appointed to represent Petitioner. (Docket No. 7.)

On November 23, 2011, counsel for Petitioner filed a motion to suppress, arguing that evidence against Petitioner was recovered pursuant to an unconstitutional search of a hotel room in which Petitioner had been staying. (Docket No. 22.) On December 21, 2011, United States Magistrate Judge James E. Seibert entered an Order granting Defendant's oral motion for new counsel and appointing Franklin W. Lash, Esq., as new counsel. (Docket No. 43.)

The parties appeared before Magistrate Judge Seibert on January 23, 2012 for a hearing on Petitioner's motion to suppress. (Docket No. 47 at 1.) On January 25, 2012, Magistrate Judge Seibert filed a Report and Recommendation ("R&R") recommending that Petitioner's motion be denied because "the officer's warrantless entry into the hotel room was based on exigent circumstances, because Defendant's arrest was based on probable cause, and because the officers were directed by Defendant to retrieve his firearm, wallet and identification card." (Id. at 2.) Counsel for Petitioner filed objections to the R&R on February 8 and 21, 2012. (Docket Nos. 50,

55.) On February 23, 2012, United States District Judge Frederick P. Stamp, Jr. entered a Memorandum Opinion and Order affirming and adopting Magistrate Judge Seibert's R&R. (Docket No. 62.)

On March 8, 2012, counsel for Petitioner filed a "Notice of Intent to Change Plea," indicating that Petitioner intended to plead guilty to the one-count Information. (Docket No. 89.) On March 12, 2012, Petitioner appeared before Judge Stamp to enter his guilty plea. (Docket No. 95.) His plea was not pursuant to a written plea agreement with the Government. (Docket No. 120.)

Petitioner appeared before Judge Stamp on May 14, 2012 for sentencing. At that time, Judge Stamp adjudged Petitioner guilty of the one-count Indictment and again noted that Petitioner had pled guilty without a plea agreement. (Docket No. 119 at 5:17-21.) He sentenced Petitioner to 108 months of imprisonment to be followed by three (3) years of supervised release. (Id. at 8:16-9:9.)

**B.     Direct Appeal**

On appeal to the Fourth Circuit, Petitioner challenged "the district court's rulings on his motion to suppress the firearm seized subsequent to his arrest and his motion alleging that the Government violated *Jencks v. United States*, 353 U.S. 657 . . . (1957), by either failing to turn over impeachment evidence or tampering with that evidence." United States v. Brooks, 497 F. App'x 355, 356 (4th Cir. 2012) (per curiam). Petitioner also argued that "his 1993 federal narcotics conviction, for which he was sentenced to seventy months' imprisonment, was improperly counted in determining his criminal history score." Id.

The panel determined that by pleading guilty without entering a conditional guilty plea, Petitioner had waived his right to challenge the District Court's rulings on his motions. Id. The Fourth Circuit also determined that the District Court did not err in assigning criminal history points

to his 1993 conviction. Id. Accordingly, the Fourth Circuit affirmed Petitioner's conviction and sentence. Id. at 357. The Supreme Court denied Petitioner's petition for a writ of certiorari on April 15, 2013. Brooks v. United States, 133 S. Ct. 1840 (2013).

C.  *Federal Habeas Corpus*

   1. **Petitioner's Motion**

   In his Court-Approved Motion, Petitioner raises the following claims:

   1. Counsel failed to investigate the state proceedings that caused the federal Indictment;

   2. Counsel failed to investigate his prior convictions; and

   3. Counsel underestimated Petitioner's Sentencing Guidelines range.

(Docket No. 137 at 5-8.)

   2. **Government's Response**

   In opposition to Petitioner's motion, the Government asserts the following:

   1. Counsel fully investigated the state proceedings that preceded Petitioner's Indictment;

   2. Petitioner has failed to show that counsel was ineffective in investigating his prior convictions; and

   3. Petitioner has failed to show that counsel was ineffective in his estimation of the potential Guidelines range.

(Docket No. 144 at 9-23.)

## III. ANALYSIS

A.  *Standard Governing Claims of Ineffective Assistance of Counsel*

   The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction.

4

Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

B.      *Claim One: Counsel Failed to Investigate State Proceedings Preceding the Indictment*

As his first claim for relief, Petitioner states that during State proceedings that preceded the filing of the federal Indictment, a tape was made that transcribed the testimony of the officers who arrested him. According to Petitioner, counsel was ineffective for failing to investigate gaps in the tape. (Docket No. 137 at 5.) Specifically, he claims that if counsel had acquired the tape and had it analyzed by an expert, counsel would have discovered that the tape had been tampered with "calling into question the reliability of the testimony given by law enforcement." (Docket No. 137-1 at 41.) Petitioner asserts that he instructed counsel to do so after hearing testimony that was not consistent with the State proceedings during the hearing before Magistrate Judge Seibert on his motion to suppress. (Id. at 40.)

As an initial matter, to the extent that Petitioner is attempting to relitigate his Fourth Amendment claim, he cannot do so now. When a prisoner has had a "full and fair" opportunity to litigate a Fourth Amendment claim, habeas corpus relief may not be granted on that claim. Stone v. Powell, 428 U.S. 465, 494 (1976). Once the district court has inquired into whether the petitioner had an opportunity to raise a Fourth Amendment claim, "it need not inquire further into the merits of the case . . .unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978). Here, Petitioner, through counsel, filed a motion to suppress. Magistrate Judge Seibert held a full evidentiary hearing on that motion and issued an R&R. Judge Stamp later adopted that R&R. Petitioner challenged the denial on direct appeal (Docket No. 144-1 at 2, 15-19); the Fourth Circuit held that by pleading guilty without a conditional plea, Petitioner had waived his right to challenge the District Court's decision, Brooks, 497 F. App'x

6

at 356. Based upon a review of the record, the undersigned finds that Petitioner was given a "full and fair opportunity" to litigate his Fourth Amendment claim.

On February 26, 2012, Petitioner's counsel, Mr. Lash, filed a motion to continue trial and a motion to dismiss based upon Petitioner's claim that the tape of State proceedings had been tampered with. (Docket No. 65.) Judge Stamp held an evidentiary hearing regarding Petitioner's contentions on March 6, 2012. (Docket No. 88.) At that hearing, Petitioner testified that prior counsel, Brendan Leary, had obtained a copy of the tape from Petitioner's preliminary hearing in State court. (Docket No. 88 at 10:17-22.) Mr. Lash also called Catherine Dillon, the magistrate assistance at Magistrate Court for Brooke County, West Virginia, who testified that any gaps in the tape were inadvertent because of a power outage that occurred during proceedings. (Id. at 63:6-64:12.) After the hearing, Ms. Dillon transferred the tapes to the Brooke County Circuit Court because Petitioner had been bound over for further proceedings. (Id. at 64:20-25.) Mr. Lash also called Glenda Brooks, the Clerk for Brooke County Circuit Court. (Id. at 69:10-16.) Ms. Brooks testified that her office maintained custody of the tape in the Clerk's vault and that no one besides court personnel had access to it. (Id. at 73-77.) On March 9, 2012, Judge Stamp entered a Memorandum Opinion and Order denying Petitioner's motion to continue trial and to dismiss. (Docket No. 92.) Specifically, Judge Stamp ruled that there was "no credible evidence presented by which this Court could reasonably conclude that the tape recording in question was tampered with by anyone, either intentionally or unintentionally." (Id. at 3.) Mr. Lash appealed the District Court's decision to the Fourth Circuit (Docket No. 144-1 at 20-24); however, the Fourth Circuit held that Petitioner had waived his right to assert his challenge because he had not entered a conditional plea of guilty, Brooks, 497 F. App'x at 356.

7

It is clear from the record that counsel investigated Petitioner's claim regarding the tape; gathered evidence; presented witnesses at the hearing before Judge Stamp; and argued on behalf of Petitioner. Given this, the undersigned finds that Petitioner has failed to meet his burden of showing that counsel's conduct did not fall "within the wide range of reasonable professional assistance." Carter, 283 F.3d at 249. Accordingly, the undersigned recommends that Petitioner's first claim of ineffective assistance of counsel be denied.

C.     *Claim Two: Counsel Failed to Investigate Petitioner's Prior Convictions*

As his second claim for relief, Petitioner asserts that Mr. Lash was aware that he had prior convictions that would be used by the Government "to aggravate the current offense," yet "waited till sentencing to confront just one of them." (Docket No. 137 at 6.) According to Petitioner, had Mr. Lash investigated his prior convictions and found that they were flawed, he had a duty to move "to have them set aside." (Docket No. 137-1 at 45.) Petitioner has raised several sub-issues in this claim, which the undersigned has considered in turn.

   **1.     Counsel Failed to Determine Whether Petitioner's Prior Convictions Comported with Padilla v. Kentucky, 559 U.S. 356 (2010)**

Petitioner first claims that "an investigation would have uncovered that none of [his] alleged prior convictions contained a Padilla v. Kentucky, 130 S. Ct. 1473 (2010), warning." (Docket No. 137-1 at 46.) According to Petitioner, a review of his prior convictions would have revealed that they were "missing the element of collateral consequence warning." (Id. at 48.)

In Padilla, the Supreme Court held that "counsel must inform her client whether his plea carries a risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on

8

families living lawfully in this country demand no less." 559 U.S. at 374. Unfortunately for Defendant, even if he did not receive Padilla warnings for his previous convictions, counsel would not have succeeded on having them set aside on this basis. Recently, the Supreme Court held that "defendants whose convictions became final prior to Padilla . . . cannot benefit from its holding." Chaidez v. United States, 133 S. Ct. 1103, 1113 (2013).

From the undersigned's reading of Petitioner's claim, it appears that Petitioner is upset because his prior convictions were taken into account for his Sentencing Guidelines range and when the District Court determined the sentence to impose, and he is attempting to rely on Padilla to show that those prior convictions were illegally obtained. However, "Padilla is rife with indications that the Supreme Court meant to limit its scope to the context of deportation only." United States v. Reeves, 695 F.3d 637, 640 (7th Cir. 2012). At the time Petitioner was convicted of his prior crimes, any risk present of increased exposure under the Sentencing Guidelines "was entirely contingent on his deciding to commit more crime in the future." Id. Under Petitioner's logic, "[u]sing Padilla as a springboard, [a court] would be forced to hold that counsel has a constitutional duty to advise the client as to how he might best continue his criminal activity while minimizing his risk of future punishment." Id. Given that this idea represents "unattractive public policy," the Reeves court noted that the "rule in Padilla [was] specific to the risk of deportation, and we see no justification for extending that to the realm of future criminal sentence enhancements." Id.

Accordingly, the undersigned finds that Mr. Lash was not deficient in failing to investigate Petitioner's prior convictions to determine whether he had been given Padilla-type warnings. Furthermore, even if counsel's inaction was deficient, Petitioner was not prejudiced by counsel's failure, as he faced no risk of deportation and because Padilla is not retroactively applicable to his

9

prior convictions. Accordingly, Petitioner's claim in reliance on Padilla fails.

2. **Petitioner's Prior Convictions and Constructive Denial of Counsel**

As part of his claim for relief, Petitioner asserts that he can collaterally attack his prior convictions through his § 2255 motion because "he was constructively denied counsel in the state court proceeding when sentencing counsel, first, allowed him to plead guilty to allied offenses and then failed to appeal his incompetence." (Docket No. 137-1 at 49.) According to Petitioner, he remains in custody for those prior convictions because they were used to "enhance" his sentence.

As an initial matter, Petitioner's sentence was not statutorily enhanced because of his prior convictions; rather, his prior convictions were used to determine his Guidelines range and the sentence ultimately imposed. In any event, the Supreme Court has announced a general rule that a defendant cannot challenge his federal sentence through a § 2255 motion "on the ground that his prior convictions were unconstitutionally obtained." Daniels v. United States, 532 U.S. 374, 376 (2001). The Court further noted: "This rule is subject to only one exception: If an enhanced federal sentence will be based in part on a prior conviction obtained in violation of the right to counsel, the defendant may challenge the validity of his prior conviction during his federal sentencing proceedings." Id. at 382. However, if "a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse." Id. While a defendant can challenge a prior conviction as the product of a violation of Gideon v. Wainwright, 372 U.S. 335 (1963)[2], in a § 2255 motion, he can

---

[2] In Gideon, the Supreme Court held that all defendants have the right to assistance of counsel, and that indigent defendants have the right to have counsel appointed for them. 372 U.S. at 339-45.

do so "only if he raised that claim at his federal sentencing proceeding." Id.

Here, Petitioner is not claiming that he was completely denied counsel in his state proceedings. Instead, he is arguing that counsel failed to take certain actions during those proceedings. Furthermore, even if Petitioner was claiming that his prior convictions were obtained in violation of Gideon, he failed to raise this claim at his sentencing hearing for the § 922(g) conviction he is attacking. Id. Furthermore, the record is absent of any attempt by Petitioner to challenge his prior convictions at any time prior to the filing of his § 2255 motion. Accordingly, the undersigned finds that he cannot use the instant § 2255 motion as a vehicle to collaterally attack his prior convictions.

3. **Counsel Failed to Raise an Argument Pursuant to Alleyne v. United States, 133 S. Ct. 2151 (2013)**

As part of his claim, Petitioner asserts that counsel failed to realize that the "decision in Alleyne effectively eliminate [sic] the ruling in Almendarez-Torres where a defendant contests his prior convictions." (Docket No. 137-1 at 51.) He states that he "did not stipulate to anything concerning any alleged prior convictions." (Id. at 56.) According to Petitioner, because he did not enter into such a stipulation, counsel should have recognized that his prior convictions needed "to be proven to a jury beyond a reasonable doubt." (Id. at 57.)

In Alleyne, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" and "found beyond a reasonable doubt." 133 S. Ct. 2151, 2155 (2013). As an initial matter, the undersigned notes that Petitioner was not subject to any mandatory minimum sentence. (Docket No. 120 at 6:14-17.) Furthermore, even if Petitioner had been subject to a mandatory minimum sentence, the Supreme Court did not declare this new rule to

11

be retroactively applicable on collateral attack. See In re Kemper, 735 F.3d 211 (5th Cir. 2013); In re Payne, 733 F.3d 1027 (10th Cir. 2013); Simpson v. United States, 721 F.3d 875 (7th Cir. 2013) ( all finding that Alleyne does not apply retroactively). In addition to the Fifth, Seventh and Tenth Circuits, a number of district courts in this circuit and across the country have determined that Alleyne should not be applied retroactively for the purposes of collateral attack. See, e.g., Williams v. United States, No. 5:13-CV-00108, 2013 WL 4083274, at *2 (W.D.N.C. August 13, 2013); Smith v. Holland, No. 13-147-KKC, 2013 WL 4735583, at *4 (E.D.Ky. Sept. 3, 2013); Smith v. Fed. Bureau of Prisons, No. 9:13–384–RMG, 2013 WL 833050 (D.S.C. July 23, 2013). Additionally, Alleyne expanded upon the holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), which found that facts increasing the statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. 530 U.S. at 490.. According to the Seventh Circuit, the "Justices have decided that other rules based on Apprendi do not apply retroactively on collateral review. This implies that the Court will not declare Alleyne to be retroactive." Simpson, 2013 WL 3455876, at *1 (*citing* Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519 (2004)).

Furthermore, the Fourth Circuit has consistently held that the Court's decision in Alleyne did not disturb the "narrow exception to the general rule for the fact of a prior conviction." United States v. Rudolph, No. 13-4545, 2014 WL 1228555, at *1 (4th Cir. Mar. 26, 2014). Specifically, the Fourth Circuit has noted that in Alleyne, "[t]he Court cautioned that its holding did not disturb judicial fact finding at sentencing for facts that do not impact the statutory punishment." Untied States v. Richmond, 558 F. App'x 317, 318 (4th Cir. 2014). Here, Petitioner's prior convictions only affected his Sentencing Guidelines range, not a mandatory minimum sentence. Accordingly, Alleyne would not apply even if Petitioner could benefit from retroactive application of its holding.

12

Additionally, the Court finds that Alleyne would also not apply to Petitioner's case because Petitioner waived his right to a jury trial. On February 24, 2012, Petitioner, through counsel, filed a "Motion for Bench Trial." (Docket No. 63.) That motion stated as follows:

> Pursuant to Rule 23(a) of the Federal Rules of Criminal Procedure the Defendant, Marcus L. Brooks, against the advice of counsel, Franklin W. Lash, requests that no jury be impaneled and that he be tried by the Court. Counsel requests the Court establish on the record that this is a knowing, intelligent and voluntary waiver by Mr. Brooks prior to proceeding with trial."

(Id.) On February 28, 2012, Judge Stamp entered an Order approving a bench trial, subject to completion of a written waiver by Petitioner, his counsel, and the Government. (Docket No. 69.) The written waiver was filed on February 28, 2012. (Docket No. 71-1.) On March 1, 2012, Judge Stamp entered an Order granting Petitioner's motion for a bench trial. (Docket No. 72.) At the evidentiary hearing held on March 6, 2012, Judge Stamp confirmed that Petitioner had knowingly and voluntarily waived his right to a jury trial. (Docket No. 88 at 3:23-8:6.) By waiving his right to a jury trial, Petitioner "waived his right for a jury to make sentencing determinations beyond a reasonable doubt." Newlen v. United States, Nos. 5:13-cv-112, 5:11-cr-24, 2014 WL 1787779, at *3 (N.D. W. Va. May 5, 2014); see also Grantham v. United States, Nos. 5:13-cv-104, 5:10-cr-37, 2014 WL 296937, at *3-4 (N.D. W. Va. Jan. 27, 2014) (finding same).

Given this, it is clear that any challenge counsel could have raised pursuant to Alleyne would not have succeeded. Accordingly, the undersigned finds that Petitioner has not met his burden of proving that he was prejudiced by counsel's failure to raise such a challenge.

### 4. Counsel Failed to Raise a Challenge Pursuant to District of Columbia v. Heller, 554 U.S. 570 (2008)

As part of his second claim for relief, Petitioner advances an alternative claim that counsel

13

should have argued that his conviction under 18 U.S.C. § 922(g) "is plainly unconstitutional" and that counsel had an "obligation to investigate this Second Amendment defense." (Docket No. 137-1 at 58.) According to Petitioner, the Supreme Court's decision in <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), "makes plain that [he] had a constitutionally protected Second Amendment right to have a firearm within that motel room in order to protect himself." (<u>Id.</u> at 59.)

In <u>Heller</u>, the Supreme Court determined that the "Second Amendment conferred an individual right to keep and bear arms." 554 U.S. at 595. However, the Court noted that "[o]f course the right was not unlimited, just as the First Amendment's right of free speech was not." <u>Id.</u> As the Court specifically noted,

> nothing in our opinion should be taken to cast doubt on **longstanding prohibitions on the possession of firearms by felons** and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

<u>Id.</u> at 626-27 (emphasis added); <u>see also</u> <u>United States v. Smoot</u>, 690 F.3d 215, 220-22 (4th Cir. 2012) (felon in possession conviction under § 922(g)(1) did not violate the Second Amendment under an as-applied challenge); <u>United States v. Moore</u>, 666 F.3d 313, 319-20 (4th Cir. 2012) (defendant with extensive criminal history did not fall within the category of citizens who enjoyed the Second Amendment right of "law abiding citizens" to use arms in defense of hearth and home).

Like the defendant in <u>Moore</u>, Petitioner has an extensive criminal history. According to his Pre-Sentence Report, he has sustained, *inter alia*, various drug trafficking convictions, including one in the United States District Court for the Northern District of New York; a conviction for attempted criminal possession of a loaded firearm; a conviction for domestic violence; and a conviction for breaking and entering. (Docket No. 104 at 8-13.) Based upon these prior convictions, Petitioner

"undoubtedly flunks the 'law-abiding responsible citizen' requirement" imposed upon the Second Amendment. Moore, 666 F.3d at 320. Furthermore, his reasoning for possessing a firearm, self-protection, "is far too vague and unsubstantiated to remove his case from the typical felon in possession case." Id.

Given this, it is clear that any challenge to Petitioner's § 922(g) conviction that relied on Heller would have failed. Therefore, the undersigned finds that Petitioner has not demonstrated that he was prejudiced by counsel's failure to raise such a defense.

### D. Claim Three: Counsel Was Ineffective In His Estimation of Petitioner's Sentencing Exposure

As his last claim for relief, Petitioner asserts that counsel was ineffective because he "grossly under-estimated the sentence." (Docket No. 137 at 8.) According to Petitioner, counsel informed him that if he pled guilty, he would face a Guidelines range of 57-71 months. (Docket No. 137-1 at 60.) In support of his claim, Petitioner has provided a copy of a letter from prior counsel, Franklin Lash, Esq. (Docket No. 137-2.) In that letter, Mr. Lash stated that Petitioner was "probably in Criminal History Catagory [sic] IV." (Id.) If he pled guilty, Mr. Lash stated that Petitioner would face "a sentence of 57-71 months." (Id.)

An attorney's false promise of a particular sentence can be ineffective assistance that invalidates a plea of guilty. See United States v. Marzgliano, 588 F.2d 395, 398 (3d Cir. 1978). However, during the Rule 11 colloquy, Petitioner stated that he understood that he could receive no more than the statutory maximum sentence, which was ten (10) years of incarceration. (Docket No. 120 at 6:14-7:21.) Petitioner also confirmed that Mr. Lash had discussed how the Sentencing Guidelines operate. (Id. at 7:13-16.) Furthermore, Petitioner stated his understanding that the Court

15

could not determine a sentence until a Pre-Sentence Report had been prepared. (Id. at 7:22-8:3.) Petitioner also confirmed that his guilty plea was not the result of any promises or inducement. (Id. at 17:20-23.) Finally, Petitioner denied that anyone had promised or predicted the exact sentence that he would receive. (Id. at 18:2-5.) A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge, 431 U.S. at 74; United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991).

The Fourth Circuit has also held that an attorney's erroneous estimate of the likely sentence does not invalidate a plea of guilty when the court informs the defendant that his sentence cannot be specifically predicted and the defendant acknowledges understanding of that fact. See United States v. Lambey, 974 F.2d 1389, 1394-96 (4th Cir. 1992) (en banc). Accordingly, because Judge Stamp informed Petitioner that no one could specifically predict his sentence and Defendant indicated that he understood, his attorney's alleged statement that he would be facing 57-71 months of incarceration if he pled guilty cannot invalidate his guilty plea. Therefore, the undersigned finds that Petitioner's third claim of ineffective assistance of counsel also be denied.

### IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 5:14-cv-31, Docket No. 1; Criminal Action No. 5:11-cr-41, Docket No. 133) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the

recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Marcus L. Brooks.

DATED: July 22, 2014

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE